*W. H. S. Thomson*, of *Thomson & Thomson*, for appellee.

PER CURIAM, May 27, 1901:

The findings and conclusions of the learned court below resulted in a decree which the defendant condemns as unjust and illegal. It seems to us, however, that the decree was warranted by the testimony and a protection to the plaintiff against the fraud and injustice which threatened his financial ruin. The schemes concocted by the defendant were designed to deprive the plaintiff of his property and to render him penniless in his declining years. The decree complained of by the defendant checked him in his reckless and disreputable career. It is to be hoped that hereafter his record will be more acceptable to some persons who have had transactions with him than it has been heretofore.

As we have not discovered any error in the decree complained of we unhesitatingly affirm it.

Decree affirmed and appeal dismissed at the cost of the appellant.

---

# Dewaters v. Kuhnle, Appellant.

*Ejectment—Sheriff's sale—Mortgage—Secret trust.*

Where a person takes title under a secret agreement to hold the same in trust for another, and subsequently a judgment is entered against him, after which he conveys the land by a deed not reciting the trust to a third person, and thereafter an execution is issued and the property sold at sheriff's sale, at which sale notice is given of the last conveyance but not of the secret trust, the purchaser at the sheriff's sale takes the land free of the trust.

Argued March 18, 1901. Appeal, No. 176, Jan. T., 1901, by defendant, from judgment of C. P. Sullivan Co., May T., 1899, No. 2, on verdict for plaintiff in case of Martha E. Dewaters, Lewis Dewaters and Frank E. Dewaters v. William Kuhnle. Before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Ejectment for tract of land in Cherry township. Before DUNHAM, P. J.

At the trial it appeared that Edward Sharpe, the former owner of the farm in controversy, died November 16, 1888, leaving a will in which he appointed his son-in-law, William Sharpe, as executor. The estate of Edward Sharpe, being considerably indebted, upon an application made by the executor, an order of the orphans' court was made October 12, 1891, authorizing a sale of the land in dispute for the payment of debts.

In pursuance of such order, the farm was sold November 21, 1891, to R. H. Brewer for $1,800, which sale was confirmed by the court July 11, 1892. Some time in September, 1894, William Sharpe made an arrangement with William Kuhnle, the defendant, by which Kuhnle was to purchase the farm at $1,800, and on the 28th day of the same month, a deed was made therefor by the said William Sharpe, executor, to R. H. Brewer, followed by a deed of the same date from R. H. Brewer to Kuhnle.

Grant & Dewaters held a judgment against R. H. Brewer which was entered in 1887 and revived by am. sci. fa. and judgment thereon, December 12, 1892. Upon this judgment an execution of vend. ex. was issued and the farm sold November 6, 1697 to Grant & Dewaters for $300.

The sheriff made return that he had sold the farm to Grant & Dewaters and afterwards conveyed the same to Israel P. Grant, whom the deed states is a surviving partner of Grant & Dewaters.

Before the sheriff's sale William Kuhnle served a notice upon the sheriff, stating that he was the owner in fee of the land in suit and "duly possessed thereof" and that R. H. Brewer had no interest therein, legal or equitable, which notice was read in the presence of all bystanders, immediately before the sheriff's sale.

On March 31, 1898, Israel P. Grant conveyed the land to plaintiffs.

The court charged in part as follows:

[We say to you, gentlemen, that that deed from the sheriff of Sullivan county to Israel P. Grant conveyed to Mr. Grant all the interest belonging to Mr. Reuben H. Brewer in the land that was sold by the sheriff. And the purchaser not only took all the interest of Reuben H. Brewer in the land, but he took

it divested of any secret trust or secret conveyance of which he had no personal knowledge, no actual knowledge, or of which he was not bound by any constructive knowledge by reason of being bound to examine by reason of notice that he may have received in regard to secret trusts.] [2]

[There has been evidence given that Mr. Brewer acted merely as trustee for John G. Scouton, or for the executor of Edward Sharpe. That was a secret trust; and as between Reuben H. Brewer and the executor of Edward Sharp, or as between Reuben H. Brewer and John G. Scouton, they could enforce that trust against Mr. Brewer and compel him to deed that property in accordance with whatever terms they might make upon it, and to whomever they might sell it. But as between Reuben H. Brewer, or as between the executor of the said Edward Sharpe, or John G. Scouton and the purchaser at sheriff's sale of the rights of Reuben H. Brewer, they could only enforce such rights as they had given notice to the purchasers and to the bidders at the sale that they possessed and had.] [3]

[There was a notice given by William Kuhnle, the defendant in this case, who was in possession of the land at the time the sheriff's sale was made in 1897; and had acquired a deed from Reuben H. Brewer to himself of the land. There was given in evidence the notice that he was the absolute owner of the land in fee simple, and that Reuben H. Brewer had no interest, legal or equitable, in the land being sold. This was such a notice as would require the purchaser to examine the records to see what title William Kuhnle had in regard to it. And if William Kuhnle had put upon record where the party and everybody might know what his title was, and under whom he claimed title—if he put that upon record, that would be the only thing that a purchaser at sheriff's sale would be bound, under that notice, to have examined. And having put upon record his deed from R. H. Brewer to himself, when the purchaser at sheriff's sale went to the record and found that (under the decision of the Supreme Court in Lantz v. Gorman), he was not bound to go further; and it was no notice of anything further than the simple fact that he held title under Reuben H. Brewer.] [4]

[So that we say to you that the deed from the sheriff of Sullivan county to Israel P. Grant, the surviving partner of Grant

& Dewaters, conveyed to Grant the title of Reuben H. Brewer as against William Kuhnle, the defendant in this case.] [5]

[There has also been given in evidence a deed from Israel P. Grant, the surviving partner of Grant & Dewaters, to the present plaintiffs in this case, so that the present plaintiffs in this case would be entitled to your verdict under the evidence in this case, for the land in controversy.] [6]

Verdict and judgment for plaintiffs.    Defendant appealed.

*Errors assigned* were (2–6) above instructions, quoting them.

*James W. Piatt*, for appellant.

*W. J. Young*, with him *John W. Mix* and *Alphonsus Walsh*, for appellees.

PER CURIAM, May 27, 1901:

We think that the court below did not err in directing the jury to render a verdict in favor of the plaintiffs and in entering a judgment thereon for all the land involved in the levy and costs.

Judgment affirmed.

---

## Fitzwater, Appellant, v. Fassett.

*Landlord and tenant—Negligence—Burial of infected horse in leased premises.*

The mere granting of permission by a landlord to a stranger to bury a dead horse in leased land, is not negligence in itself. If the horse is infected, and this fact is not known to the landlord, and if the landlord does not receive any benefit or compensation for the permission granted, and has no part in the burial and gives no directions concerning it, he cannot be held liable by the tenant for the loss of cattle infected with disease by the dead horse.

Argued March 19, 1901.    Appeal, No. 68, Jan. T., 1901, by plaintiff, from order of C. P. Bradford County, Dec. T., 1899, No. 254, refusing to take off nonsuit, in case of Matt Fitzwater